Good morning. Good morning. Before we get started with the argument, I just want to make sure that I understand how counsel wishes to organize the arguments here. It's 20 minutes per side. I take it that you would like to aspirationally reserve a bit of time for rebuttal? Five minutes, if I could. Okay. I'll try to help you out, but keep your eye on the clock yourself as well. And on the Appellee side, I understand that Ms. Stevenson and Ms. Bennett, you're splitting the argument time 10 minutes each. Is that right? That's correct. And I had a request relayed to me by the courtroom clerk that you would like to save a couple of minutes. But who would like to save a couple of minutes for rebuttal? We're going to each actually kind of do nine minutes each and then save two minutes at the end for rebuttal. All right. May it please the Court. James Rohanda of Davis Polk, representing Meta and arguing on behalf of appellants. Meta's appeal here presents a very narrow question, and that is, does Section 230's immunity from suit require dismissal of the failure-to-warrant claim? We think that it does for multiple reasons. Let me just say at the outset that none of the arguments that we're going to advance here today would require the Court to expand the interpretation of Section 230. In fact, virtually every one of the propositions of law that we're relying on here is supported by multiple Ninth Circuit decisions. Now, the district court found that certain publishing tools were protected by Section 230. There's a — I'm sorry for interrupting. We'll get to the merits if there's sufficient time, but I think there's a bigger elephant in this argument, which is whether we even have jurisdiction at this stage to hear the case. Yes, I think there is jurisdiction here. And I think that first — my first point is, in fact, that this immunity from suit both satisfies the jurisdictional requirement and dictates the result here, in our view, that the Court erred in not dismissing the failure-to-warrant claim. The immunity from suit issue, when you have an immunity from suit and the Ninth Circuit has said repeatedly, over and over again, that Section 230 provides immunity from suit, that is a — Well, we've said other things, too, right? I mean, for example, and you're familiar with the Carrafano case? Yes. And where we said, through this provision, Congress granted most Internet service — services immunity from liability.  Well, Carrafano also says that Congress intended that service providers be afforded immunity from suit. Those are not inconsistent. So it's about the — Well, I think my question to you is that when Congress wants to give immunity from suit, it knows how to say that. And so I'm looking at the statutory text, and it reads like immunity from liability, not immunity from suit. What the statute in 230E3 says, no cause of action may be brought and no liability may be imposed under any State or local law that's inconsistent with this section. If it was intended only to be a defense and not immunity from suit, there's no need to include the phrase, no cause of action may be brought. That would be superfluous. And under any, you know, standard statutory construction, you know, Congress's statutes aren't to be interpreted as containing superfluous language. This part was added late in the legislative process? Yes. And this is where the conference essentially report called this change a minor modification, or said all of the changes in the final stages were minor modification? Again, you could say anything in a congressional, you know, in connection with those reports, but here it is minor in the sense that I believe that it did constitute immunity from suit, and it's minor in the sense that it's Immunity from suit, changing immunity from liability to immunity from suit is minor? Not if you always intended it to be from immunity from suit. Without having said it in the earlier drafts. Right. So it's a clarification. Well, it's a specific section that talks about inconsistency with state laws, and your argument is based on this subsection of E3 that the rest of 230 should be read to confer immunity from suit. I don't think that, you know, taking this language in a specific section pertaining to state laws would give you explicit immunity from all suit. Where else in 230 do you see explicit language granting that immunity? It is in 230E3. Okay. So the immunity from suit is not found elsewhere. Right. On occasion, courts have looked at this and said, well, you know, immunity from suit is the 230C1 provision. That's not — I wouldn't say that's the better reading of it. Immunity from suit provision is contained in 230E3, which is a very important provision because it essentially says, you know, it accomplishes many other things, including the fact that no cause of action or claim can be brought that's inconsistent with this statute. It's not just relying on 230C1. You're supposed to look at this statute holistically. I think the counterargument that some plaintiffs have raised in response to your superfluousness argument is that liability can sometimes be imposed without a cause of action being brought. For example, liability imposed by a State administrative agency. How do you respond to that argument? I think it's — I do think it's superfluous, and I think I would say that, you know, that at least three times — I mean, the Ninth Circuit has said this, and it said it — in fact, it not — it not said it emphatically. Like, in the roommate's case, it said Section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles. That's what the colorful language, I believe, that case had about the 10,000 duckbites. And Carafano itself talked about congressional intent, and Zango says it plainly concluding that Section 230 plainly immunizes Interactive Commuter Services from suit. And many other — D.C. Circuit, the Fourth Circuit, the Sixth Circuit, they've all said the same thing. And so I think analyzing all of those issues, the conclusion of the majority of circuits that have addressed this issue have concluded that it's immunity from suit. And we think that that is the classic case for collateral order appeal, especially because the sine qua non of the collateral order appeal is if it is immunity from suit, that will be lost unless it's corrected by this Court on the collateral order doctrine, because Meta and other defendants will have to go for it and defend themselves in suit. And so applying the collateral order doctrine is consistent with, I don't know, 20 years of Ninth Circuit cases, maybe not quite that many years of Ninth Circuit cases and multiple other circuits. Well, let me ask you this, Counsel. Shifting to a slightly different point, one of the issues that we have to decide is whether there's been a conclusive determination of disputed issues. I mean, obviously, this is a massive litigation, and the district court had signaled a willingness to be open to the scope of immunity at later stages in the litigation as it develops. Doesn't that mean that there's been no conclusive determination on some key disputed issues? No, Your Honor. We think that there is a conclusive determination, which is it has been denied and Meta and the other defendants are litigating the suit. They have been denied immunity from suit by having to take part in the litigation. It's therefore been conclusively determined. It seems pretty conclusive going forward in defending the suit that we think Congress said you do not have to defend that you're immune from. And so that seems pretty conclusive. Doesn't the Midland case, though, require an explicit statutory statement that there is an immunity from suit? And usually those types of cases concern a public agency or a public official. I'm wondering what substantial public interest would be imperiled if Meta stands trial and goes through this litigation without blanket immunity from suit. Well, I think substantial public interest is stated in the statute itself. I mean, it has a very row – the Ninth Circuit has said it should be – it's a robust immunity and it should be – immunity should be decided in favor of the defendant where it's a close case. And in this case, the policies behind the statute, which are stated in the statute themselves in 230B, obviously say that it's very important that companies be able to be – internet companies, websites, social media companies are able to – interactive computer services are able to go about their business unfettered by state regulation. And that this, in your view, is as important as defendants in criminal cases not twice being put in jeopardy for the same offense, and in terms of law enforcement or other State officials not having to go to trial if they have qualified immunity. You put your interest here in those same two categories? Your Honor, I would say that it's not required that one way the interest in that case versus this one. No, I wouldn't take the position that that is, you know, more or less important than this case. The position here is that it is a matter of substantial public interest. It's stated by Congress. And it affects daily lives. I mean, this is something that's – this is the form of communication for hundreds of millions of Americans. Congress said we want to protect it from State law. And this Court and multiple other circuits who have looked at this issue who have said it's immunity from suit. It would be an enormous thing to require defendants here to have to defend these types of suits, especially the extent we look at the merits here, especially when it goes to the heart of the statute. These claims go to the heart of publishing activity. They go to claims about – Can you give us other examples of private actors being granted immunity from suit and the statutory language that granted it? Because I think Congress knows how to inject language into a statute to grant absolute immunity or immunity from suit to an actor. Can you give me other examples? Well, attorney immunity, litigation immunity. There are – obviously, there's – it's public, but there's judicial immunity that extends to lawyers as well, the litigation privilege. And those things frequently are not subject to statute. They're frequently subject to immunity based on common law and State law. I mean, Texas, for example, has an attorney immunity case. There's a choice case in the Fifth Circuit where it held that the collateral order doctrine applied because there was attorney immunity. So it has been held to private actors. And I do think that the most reasonable reading of the statute is that it tended to do something besides, in addition to, providing a defense. It's not a position that it's an either-or proposition, that it's simply a defense or a – most affirmative defenses, you know, they don't all have – they don't all provide immunity from suit, but this one does. But even apart from the grounds with respect to the basis for the suit, which we think that immunity from suit does following Ninth Circuit prior cases, it does provide both a jurisdictional basis and a basis to reverse. In addition to that, we think that it's very important to look at this case. If that's not sufficient for the Court to reverse, if one were to look at the failure to warn claims in particular, the Ninth Circuit has said in two very recent decisions that the analysis here is where does the duty arise, and if the duty arose from the defendant's activities as a publisher of third-party content, then there's immunity. And here, the alleged duty does not arise independently from publishing. The Barnes case said this first. It said that when looking at the duty, you look at the duty the plaintiff alleges that the defendant violated. If it derives from the defendant's status or conduct as a publisher or speaker, if it does that, the Section 230c1 precludes liability. And then you look at a State of Bride and Grinder, and the Ninth Circuit dismissed in State of Bride both the negligent design and the failure to warn claims and said this was an attempt to plead around Section 230, because what was being done is, in part, the failure to warn was about the alleged harm from an unreasonably designed platform. And Grinder said that both the design defect and failure to warn claims were based on neutral platform features that were meant to facilitate the communication and content of others, and most importantly said that the duty to warn claim does not operate independently of the site's publishing function. That's exactly what we have here. The duty is not independent of the publishing function, and that's why I think this is such a critical case, because it really challenges, goes to the heart of what the statute was intended to protect. A lot of the other Ninth Circuit cases, they're one-off cases with isolated facts. This is a case that essentially says you're liable, you can be potentially liable for engaging in publishing content, engaging in publishing activities. Well, I think that's why it's, that's why I have a hard time accepting your argument that this is the appropriate stage to handle the appeal. There are lots of allegations on the addictiveness of the platform itself, separate and apart from any sort of content. And the district court, in its ruling, did signal that, look, these failure for plaintiffs, but for now, I'll let them go forward. The scope of 230 immunity in this context is somewhat in flux. I may be paraphrasing some of the district court's views here, but I'm going to revisit it. It's an early juncture of the case. Let's see how the case develops, and then figure out whether the scope of 230 immunity is as broad as you claim, or whether there are certain allegations and claims that can go forward under these circumstances. And now you want us to jump in and say, oh, no, 230, when it's invoked, the scope is so broad that it's really, you know, immunity from suit. Then we don't have to defend the case at all. That's difficult to accept under, in this context. Well, that's a pretty accurate description of what the district court judge said. But that flux, that statute being in flux or the issue being in flux, it's no longer in flux, we would submit, after the Grinder case, because the Grinder case was decided after that. It makes it very clear that the failure to warrant claims can't survive unless they're independent of publishing activity. And I guess I would say it's a And if you're right, the district court would revisit that. She's already signaled a willingness to do that. But meanwhile, we'll be subject to suit when we are, in fact, immune from suit under clear Ninth Circuit authority and the statute. You'll be subject to suit until, if you're right, you win the case. If you lose it below, if you win below and California appeals and you win on appeal, it'll be over. And if you lose below and you appeal and you win, that issue will be done. And whichever court is looking at it is going to be looking at it on a complete record. I mean, I'm struck by the judge's statement. Defendants ignore that the court has yet to rule on the claims of both the state attorneys general and the school districts. The extent of the overlap is unclear. Defendants claim that there is none. It's disputed. The court remains concerned that immediate appellate review would likely lead to piecemeal appeals, compound delays, and increased inefficiencies. And I know I'm talking a long time here. I apologize. But to me, this is not like the double jeopardy provision of the Constitution where the absolute right is gone forever as opposed to you'll have the opportunity to make these arguments on a complete record. So I'm having trouble seeing how immediate the harm is and the breadth of the harm. Well, I guess it's a denial nonetheless. We were denied dismissal based on an immunity from suit claim. And we are litigating the case. That is a denial just as much as if the court said I forever decide that those claims can go forward. It's still a denial because you're subject to suit. And I would come back to the fact that we're in — and it could always be said that this could be corrected after a final judgment if it's just a defense, but it cannot be corrected after final judgment if the — if it's immunity from suit, because we will have — we are being subject to suit right now and will continue to be subject to suit in a case where we don't think we should have to be subject to suit and have to go through a trial potentially. We can't — there's no guarantee as to what the judge — if the judge revisits an issue, what the judge will decide. The question is, it was a denial of our motion to dismiss based on the positions advanced. And so it's a denial nonetheless. And it doesn't need to be as serious as a double jeopardy clause. It is a denial of immunity from suit. So that's — the predicate question is, is it immunity from suit? And we would argue that based under clear Ninth Circuit authority, the panels have held that previously in multiple cases. Thank you. Thank you very much, counsel. Can you put 10 minutes up? May it please the Court. Jennifer Bennett on behalf of the school district, local government, and individual plaintiffs. And I'll start with the collateral order doctrine because I think the Court can begin and end there. So on the collateral order doctrine, I think it's helpful to take a step back and remember what the collateral order doctrine is doing. As the Supreme Court has explained, the collateral order doctrine is a judge made exception to or gloss on, depending on which of the cases you look at. But either way, it's a gloss on the statute that limits appellate jurisdiction to final decisions of the district courts. And because it's essentially this judge made doctrine, that's why the Supreme Court and this Court have repeatedly emphasized that the doctrine must be kept extremely narrow. And that repeated emphasis started even before Congress passed a statute making clear that the preferred way to create new categories of interlocutory appeal is through rulemaking. And since then, not only has the Supreme Court said the collateral order doctrine is extremely narrow, the Court has said in Microsoft v. Baker, for example, that rulemaking is the way to create new categories of immediate appeal, not case-by-case decision-making in particular cases. And so Meta is asking this Court to do exactly what the Supreme Court in Microsoft said that courts shouldn't do. It's asking this Court to split with the Tenth Circuit and create this new category of immediately appealable orders that in 30 years no court has ever said can be immediately appealed. And so if it's going to justify this extraordinary request, at the very least, it needs to satisfy all three conditions of the collateral order doctrine, and it can't satisfy a single one. And I'll start with the effective unreviewability condition, and I'll note that has two prongs. It's not just a right to avoid trial. It's a right to avoid trial that if not immediately appealable would so threaten the public interest as to outweigh the interest underlying the final judgment rule, and not just in this case, but in the whole category of cases. And so to start with the first part, the right to avoid trial, by the time Section 230 was enacted, the Supreme Court had repeatedly emphasized that courts are required to view claims of a right to avoid trial with skepticism, if not a jaundiced eye. So when Congress was enacting Section 230, this case law was well established. It knew that's what the Supreme Court, the standard the Supreme Court was going to apply. And nevertheless, it didn't use words that suggest that it wanted to provide a right to avoid trial, let alone clearly demonstrate that. And we know, as you mentioned, that Congress knows how to do that. In the PREP Act, Congress said there's an immunity from suit and from liability, and then there are provisions discussing an interlocutory appeal. When Congress wants to provide an immediate appeal, it says so. I think we're all familiar with the Federal Arbitration Act. It explicitly gives an immediate appeal for denials of motions to compel arbitration. Congress didn't do any of that here. So what does no cause of action may be brought? What does that mean? Sure. So that is language, and we have a number of examples in footnote 3 of our reply brief, but that's language that's commonly used to establish ordinary limits on  And in fact, the most common usage of that language is for statutes of limitations. No cause of action shall be brought after 10 years of the incident. And it's clear in this Court's case law in Rossman and the Supreme Court's case law in Will, statutes of limitations are not immediately appealable. So what Congress did is used language that has never been understood to convey a right to avoid trial. Here, it's always been understood to limit ordinary claims. And I think, as I understand the argument, the argument is, well, it paired that phrase, no cause of action may be brought, which is used to ordinarily limit claims, has never been understood to provide a right to avoid trial, with the phrase, and no liability may be imposed, also never understood to convey a right to avoid trial. But the combination of those two phrases in a preemption provision somehow grants a right to avoid trial. And that just can't be right. It doesn't accord with the standard that the Supreme Court has said that we review these claims with skepticism. It also, you know, well, two points on that. First, it's not superfluous. You know, you can avoid, you can impose liability without bringing a cause of action, for example, in an administrative suit. Similarly, you can bring a cause of action without imposing liability on anyone. A number of State courts have, don't adhere to the same standing rules as Federal courts do, so you can bring causes of action for advisory opinions that potentially don't impose liability on anyone. You could bring, you could try to get a preliminary injunction, which won't impose liability on anyone but requires a cause of action. And even if you disagreed with me on that, this Court, and I'm not aware of any Court that has ever held that the fact that Congress uses this kind of belt-and- suspenders approach transforms something that hasn't ever been a right to avoid trial into one. And I think a useful example for this is this Court's decision in Rossman, which is cited in our briefs. And I'll just read you the language there. The language there was, no person shall be prosecuted, tried, or punished for any offense unless the indictment is found or the information instituted within five years. So the language is, prosecuted, tried, or punished. You could presumably make a similar argument there, which is to say, if you say no person shall be punished, the only reason to add no person shall be prosecuted or tried is to provide a right for that trial, that prosecution, not to occur. And yet this Supreme Court, rather this Court, held it's not immediately appealable under the collateral order doctrine. It's not a right to avoid trial. And I'm not aware of any example where this idea of combining two phrases, neither of which provide the right, somehow magically create this new right. And that's especially true here where it's tucked into a preemption provision and it would be quite an odd right to avoid trial if it's a right to avoid trial under conflicting State law under certain circumstances. The — and then there's the second half of this question, which is, is the right to avoid trial, is not having an immediate appeal of that right, would that so imperil the public interest that we're going to say the whole category of cases is essentially exempt from the final judgment rule? And I don't think that is true here either. So the kinds of interests that this Court and the Supreme Court have held satisfy that are things like State sovereign immunity, where the core of the interest is the right not to be subjected to trial in another jurisdiction's court. Double jeopardy. Again, the core of the right is not to be subject to the awesome power of the government twice for the same crime. You know, this Court in Gopher Medium was recently en banc. The Supreme Court have repeatedly recognized that there are a number of important interests that might be lost if you wait until after trial to have an appeal. But that's the policy decision, that's the balance Congress struck when it enacted this statute limiting appellate jurisdiction in 1789. And the rule has been the same since. You know, you have attorney-client privilege not immediately appealable under the collateral order doctrine. Speedy trial rights not immediately appealable. The attorney — rather, personal jurisdiction standing. A whole host of important interests that aren't subject to the collateral order doctrine. And I think the most important one is the First Amendment. You know, there's no right to immediately appeal a defense, a First Amendment defense. And this Court made that clear in Nunag Tenedo, for example, which was about an immunity that is based on the First Amendment. No collateral order appeal there. And that's despite the fact that First Amendment interests are, of course, very important. But the point is that the threat to those interests of having to wait until final judgment, like everyone else, to appeal is not so great as to overcome the interest in the final judgment rule. And here, Section 230 has been around for 30 years. No court that I'm aware of has granted an immediate appeal. The Internet seems to be doing just fine. And in fact, here MEDA didn't — you know, MEDA didn't appeal even all of the district court's Section 230 decisions. It didn't appeal even on the decisions it tried to appeal. It left — it didn't appeal all of the parts of those decisions. It didn't seek a stay. So MEDA itself doesn't seem to think that going forward is actually this big threat to the Internet or to — or to speech. And on the other side of the balance, an immediate appeal here would lead to exactly the kind of inefficiency, cost and delay that underlies the final judgment rule in the first place. You know, MEDA can see —  I want to remind you that you wanted to save a little bit of time.  And in fact, I'll just stop there and I'll save a little bit of time for what I'll thank you. May it please the Court. I'm Shannon Stephenson on behalf of the State Attorneys General. We agree with the private plaintiffs that the case should be dismissed for the collateral order doctrine. I'd like to take just a few minutes to focus on a couple of issues related to the merits of the 230 argument. The first is that Section 230 applies only to claims that fault the defendant for information provided by a third party. The fact that claims depend on the existence of third-party content is not enough. This case — this Court has said that multiple times. We have cases, and counsel raised them, where we've said you can't plead around 230 immunity by failure — by adding failure to warrant claims where negligent design claims would be covered by the immunity provision. Now, let me — I'll have you address that point in particular, but also, before I forget to ask you in the limited time that you have, just to give me an idea of what stage of the litigation we're at in the district court below. I know she had set up in the case management order priority tracks, and since this appeal was filed, I haven't kept track of where we're at. Sure. We are well far along in discovery nearing the end. Experts have been disclosed. We are in the beginning stages of summary judgment briefing, and my understanding is that trial is looking to be set in the summer or fall of this year. But there's no trial date now. There's not a trial date as of today. That's correct. All right. And getting to the failure to warrant theories, which I think the district court characterized as somewhat novel. Well, and let me speak with respect to the state attorneys general. We do not have failure to warrant claims. We have pled deception claims, which, you know, are broad remedial claims under our consumer protection statutes that say that businesses can't mislead the public with respect to consumer transactions. So this is not even a failure to warrant claim with respect to the state attorneys general deception claims. As I understood Meta's argument in the district court, they didn't – they also didn't challenge any of the affirmative misrepresentations that we alleged to support our deception claims. They simply said, if you are proceeding on just an omissions theory, then we are going to consider that the same as a failure to warrant claim. But they don't point to a single paragraph in our complaint that relies on a pure omissions theory. So it seems like they're asking for an advisory opinion about what theories they might be able to – we might be able to argue about as the case goes on. And I think that would just be premature. But to get to your question more specifically about this pleading around question, and can you plead a failure to warrant claim or another type of claim, all of that depends on the existence – the 230 immunity is always going to depend on the existence of whether there is unlawful third-party information that forms the basis in the harm that's being complained of. And that's what's missing in this case. And I want to direct you specifically, because Lemon called this out. This is at page 1094, specifically talking about this pleading around problem. And it said, in the cases where such creative pleading has posed a concern, the plaintiff's claims at bottom depended on a third party's content without which no claims in this case do not depend on any third-party content. They are content agnostic. Our claims are that META has developed a suite of features that are designed to exploit the brain chemistry and particular psychological vulnerabilities of children in order to keep them on their platform for as long as they possibly can, serving them the most number of ads that they possibly can. And it doesn't matter what the content is. META doesn't know what the content is. We couldn't tell you what the content is. It varies from person to person. And so because there is no third-party content that anyone could bring a lawsuit about, there is no liability from that information itself, there is no 230 immunity here. And I guess if you look at the entire body of this Court's precedent on that issue, the facts of the cases bear that out consistently. Every case where 230 immunity has been found, there is harmful, actionable third-party content, whether that's in Dobie Grinder, the communications that led to rape. In Bride, it's harassing and bullying content. In Cleese, there were false advertisements provided by third parties. And in Dyaroff, there were drug communications that led to the sale of tainted drugs. I'm not aware of any published case anywhere finding 230 immunity where there was no harmful information coming from a third party. And at this point, I think we have 22 State District Court cases addressing allegations spot on, basically identical to the ones in this case, that have all found that there is no 230 immunity for these reasons. The second problem, I think, with Mehta's Merits case is that in order to be targeted or claimed to target a defendant as a publisher, they have to be able to remedy the complaints by removing or editing or monitoring third-party content. This Court has said that over and over again. And that's not just one way that they can prove 230 immunity. That must be the only way that they can remedy the allegations in the complaint. And again, here, our complaints are about features that they can remedy without looking at any third-party content at all. They can change default settings. They can provide different tools to help children monitor their time online. But none of our claims depend on them even looking at any third-party content, taking anything down, reviewing or editing anything. And that's just another reason why 230 immunity is not available here. One finding of the District Courts that I wanted to point out that I think was based on a misconception about publishing and how the platform works, the judge said with respect to some of these features that she thought that MEDA would have to publish less if they addressed our concerns about these features. And I think that misunderstands how the platform works. As soon as any user drafts a post and submits it to the platform, that material is published and it's available to be found by anybody who wants to look at it. The fact that MEDA can't compel children to stay on their platform longer to read the maximum number of posts is not publishing. That material is still out there. It's published. They don't have to take it down. But that doesn't mean that they have the right to design an unfair product designed to manipulate teenagers in order to review as many posts as they possibly can. So I think that was just a misconception underlying some of her logic there. And again, just to return to the failure to warn argument, we don't have failure to warn claims. Our claims are deception claims based on an extensive record by MEDA of misrepresentations to the public about the design and safety of their products. And it may reserve rebuttal for Ms. Bennett. Can we decide how to split time? Sure. You want to cede some of your time to her? I will do that, yes. Unless the court has any further questions. It doesn't appear that we do. Thank you. Thank you. Thank you. The language of no cause of action may be brought is not a preemption language. The Ninth Circuit has not held that. The Ninth Circuit has said that the statute provides immunity from suit. And it has also explicitly said it's not merely a defense. It's an immunity from suit. Obviously, the issue is separate from the merits. The merits issue is, is there a merit to the argument about failure to warn? That requires evidence and witnesses and a trial. It's separate from that. It's a predicate question. If immunity from suit, we are being currently being deprived of that right that the Ninth Circuit has said we have and that this the statute has provided for us. It's a Federal statutory right. It's not the First Amendment issue. It's stated by Congress and it's a Federal statutory right. As to the public interest, the public interest is very significant. And it's stated in the statute itself. It talks about being free from the Internet to be able to develop the Internet and for it to preserve the vibrant and competitive free market that exists. It should be unfettered by Federal or State regulation. Nothing could be more fettering than something that would require removal or monitoring of content, which is what would be required here. Obviously, under these claims, you'd either have to remove the claim so as not to give the warning or you'd have to monitor the content and say what are you going to give a failure to warn, when is a failure to warn appropriate if they were to be held liable. So it certainly would really dramatically, it would not be consistent with what Congress intended. And again, Section 230e3 says interpret this section as a whole, Section 230 as a whole. If it's inconsistent, this Court has frequently looked at the policies in determining these issues and looked at the policies under Section 230b stated in the statute. In fact, the claims here, including the failure to warn claim, which is not supported by the case law, by the State of Grind, the case law by the Ninth Circuit in the State of Bride and Grinder and Barnes, and it's inconsistent with those statutes. It's also inconsistent with multiple cases that have protected publishing tools as a category, including the Dyroff cases and other cases. Here, these claims would literally cut the heart out of the statute, because what they're saying is these are tools in which, in ways in which content is being shared and content is being shared with those tools. And that, to create any liability, whether it's under design defect or failure to warn theory, is going to encumber those rights, which is, would be inconsistent with the, with the statutory protection. And I would say that, here, the, the, that immunity from liability for the use of publishing tools, in addition to Dyroff and the roommates cases, in the case of the State of Bride, and allowing those to go forward would not be consistent with the statute. And then, finally, I would just say that, as to the AG's assertion that they're not bringing failure to warn claims, the district court disagreed and essentially said your omissions theory is, in effect, a failure to warn claim. Now, they'll have to deal with their, their argument here, you know, in the district court that they're not bringing any failure to warn claim, which would have consequences of that failure to warn claim. But that's what she found, that it was a failure to warn claim because it was based on an omission theory. Thank you, counsel. Thank you. Just two quick points. The first is, I keep hearing that this appeal is about failure to warn claims. There is no failure to warn claim in this appeal. There is the, the individual school district and local government plaintiffs had a separate failure to warn claim. Meta did not appeal that cause of action. So, what's on appeal here is, essentially, the district court's opinion that, if the plaintiffs rely on a failure to warn theory in support of other claims, she wasn't going to prevent them from doing so at this stage. And I think that that's relevant to the collateral order inquiry and particularly to the conclusiveness factor. Nothing, no, the district court, nothing on appeal concluded any claim at all here and it wouldn't, even if this court were to overrule the district court's decision. So, not only did the district court say, I need more information, nothing on appeal would cause a claim to go forward or not. And, in fact, the district, the hearing on summary judgment, which raises these same issues, is, I believe, January 26th. So, the court is, in fact, going to reconsider this quite soon. On the question about Grindr that you asked, Grindr is, is very clear that the difference between Grindr and, for example, this court's decision in Doe versus Internet brands, and I think Khalees actually explains this distinction as well pretty clearly, is that in Grindr, well, there are two distinctions. One, in Grindr, the fundamental claim was this content is unlawful. It's messages caught leading to illegal activity. But the second distinction, specifically with respect to the failure to warn theory in Grindr is, and Grindr's explicit, says there's no allegation that Grindr knew that this, specifically, that this was happening on its platform. Whereas, where there are allegations that the company knew, then those claims have been allowed to go forward. And the reason for that is, absent an allegation that the company actually knows that something, that this harm is happening on its platform, then the only way it can comply with the duty is to monitor the content on the platform. And that, of course, is what this court has said that Section 230 prohibits. But where the, where we know the platform knows without having to monitor content and where the duty doesn't require them to do so, then those claims can go forward. And that's what this court said in Interbrands. It's what this court explained in Collise. And, in fact, it's what this court has since explained in its recent case of Doe 1 v. Twitter. The last point I will make is we talked about the Ninth Circuit cases that have talked about immunity from suit. This court does not need to, would not conflict with those cases if it held that the collateral order doctrine bars this appeal. And, in fact, what the Supreme Court has said over and over again is that courts, when they use language like that outside of the collateral order doctrine context, it's often just loose language. The question for the collateral order doctrine is really specific, which is, is there a right to avoid trial? Is there a right to avoid trial that, if it happened, would so imperil the public interest that it overcomes the interest underlying the final judgment rule? And this court has never ruled on that. And, in fact, the same language that Meta points to in Roommates is language that this court used in, for example, Green about First Amendment defenses. And this court in Unacionado, recently in Gopher Media, held that there was no collateral order appeal there. Thank you, Your Honors. All right. Thank you very much to both sides. We really appreciate your helpful arguments this morning, the matters submitted. And that concludes our argument calendar for today. We'll be in recess until 10 o'clock tomorrow. Thank you. Thank you.
judges: NGUYEN, BENNETT, Matsumoto